IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

MUSTAFA MOUSAB ALOWEMER

Criminal No. 19-219

## UNITED STATES' SENTENCING MEMORANDUM

AND NOW comes the United States of America, by its attorneys, Cindy K. Chung, United States Attorney for the Western District of Pennsylvania, and Soo C. Song, Assistant United States Attorney for said district and submits this Sentencing Memorandum to assist the Court in determining the appropriate sentence for defendant Mustafa Alowemer.

The United States urges this Court to impose a lengthy term of imprisonment commensurate with the severity of the defendant's crime of conviction, attempting to provide material support to the ISIS Terrorist Organization in violation of 18 U.S.C. § 2339B(a)(1), and commensurate with the aggravated, sustained, elaborate and violent criminal plot that he conceived of and refined. The sentence ultimately imposed by this Court should also account for grievous potential for harm and injury to the defendant's intended victims and the fact that he targeted a place of worship to avenge ISIS grievances based upon religion and nationality. This defendant was undeterred by the likelihood that an explosion of his desired and intended force would necessarily kill innocent residents in the neighborhood surrounding the church. In his own words, the defendant's stated objective was to retaliate against Nigerian Christians in the name of ISIS,

1

to "strike fear" and obstruct their free exercise of religion, to paralyze the City of Pittsburgh, inspire a domino-series of attacks in the U.S. homeland by ISIS adherents.

## I.  PROCEDURAL HISTORY

The detailed criminal complaint referenced recorded and documented communications with an Undercover FBI Employee (UCE) and FBI Online Covert Employee (OCE) that demonstrate that Alowemer plotted to bomb the Legacy International Worship Center, a church on the North Side of Pittsburgh, using a powerful and destructive explosive device.  According to defendant Alowemer, his motivation included a desire to detonate a device at the Church to support the cause of ISIS and to inspire other ISIS sympathizers in the United States to join together and commit similar acts on U.S. soil in the name of ISIS.  The salient, largely undisputed facts that constitute the defendant's criminal conduct have been documented through the sworn criminal complaint affidavit, (Doc. No. 3-1), extensive testimony at the preliminary hearing (Doc. No. 25), detention hearing (Doc. No. 62), change of plea hearing and Presentence Report.

Defendant Mustafa Alowemer pled guilty to Attempting to Provide Material Support to a Foreign Terrorism Organization (ISIS), in violation of 18 U.S.C. § 2339B(a)(1).  According to the United States Sentencing Guidelines and U.S. Probation, at a base offense level of 37 and criminal history category of VI, defendant Alowemer's guideline range of imprisonment is <u>360 months to life</u>.  However, by virtue of the plea agreement, which provides for the dismissal of Counts 2 and 3 which charged Distribution of Information Relating to Explosives, Destructive Devices, and Weapons of Mass Destruction in furtherance of a crime of violence, in violation of 18 U.S.C.

§ 2332a(a)(2), the maximum statutory sentence is 20 years and therefore correlates to a guideline term of imprisonment of 20 years (240 months).  <u>See</u> U.S.S.G.§ 5G1.1(a).

## II.     SENTENCING ANALYSIS

### A.     ISIS as a Foreign Terrorist Organization

ISIS is a foreign terrorist organization that has claimed credit for innumerable acts of violence resulting in death, injury and devastation. These terrorist activities are part of ISIS's broader goal of forming an Islamic state or "caliphate" in Iraq, Syria and beyond.  In the course of their violent quest of establishing a caliphate, ISIS at its core, necessarily and by definition strives to influence and affect the United States and foreign governments by intimidation and coercion, and engages in acts of terror and violence to avenge and retaliate against the United States and foreign governments.  ISIS has pursued its objective of an Islamic state through military and violent conflict aspiring to claim an area in the Middle East and Africa that encompasses all Muslims worldwide.  ISIS has pursued this objective through armed conflict with nation states and, among other means, killing and deliberate targeting of civilians; mass executions; persecution of individuals and communities on the basis of their religion, nationality, or ethnicity; kidnapping of civilians; forced displacement of Shia Muslim communities and minorities; killing and maiming of children; rape; and other forms of sexual violence (including against Yazidis).  ISIS has recruited thousands of foreign fighters worldwide to assist with its efforts to expand its so-called caliphate in Iraq, Syria, and other locations in the Middle East and beyond.  ISIS has also leveraged technology and social media to spread its violent extremist ideology for the purpose of inciting adherents to commit terrorist acts.  <u>See</u> Doc. No. 3-1.

In the years leading up to the offense conduct in this case, ISIS was conducting "individual executions . . . more or less continually, and mass executions every few weeks."  See United States v. Lutchman, 910 F.3d 33, 36-37 (2d Cir. 2018) ("Lutchman pledged his allegiance to ISIL and stated his intention to 'spill the blood' of nonbel]ievers."); United States v. Van Haften, 881 F.3d 543, 543 (7th Cir. 2018) ("Van Haften fits the typical profile of a terrorist: he believes that ISIS is fighting a holy war against America—a war that will culminate in the establishment of a global caliphate."); see also Graham Wood, THE ATLANTIC, What ISIS Really Wants (available at https://www.theatlantic.com/magazine/archive/2015/03/what-isis-reallywants/384980/).  ISIS has killed countless people and unequivocally seeks the destruction of the United States of America. See, e.g., United States v. Suarez, 893 F.3d 1330, 1332 (11th Cir. 2018) ("When the FBI arrested Harlem Suarez, he had already declared allegiance to the Islamic State of Iraq and al-Sham (ISIS), attempted to recruit others to join him in destroying the United States"); Doe v. Mattis, 889 F.3d 745, 749 (D.C. Cir. 2018) (ISIS "controls territory in Iraq and Syria, and has perpetrated and aided terrorism there and around the world, killing several thousand civilians, including American aid workers and journalists."); United States v. Khusanov, 731 F. App'x 19 (2d Cir. 2018) (noting that ISIS has a "history of particularly violent conduct" and "target[s] members of the United States armed forces serving abroad and encourage[s] terrorist acts within this country") (citation omitted). ISIS has perpetrated gruesome levels of violence.

At the sentencing hearing on November 4, 2022, the United States will call terrorism expert Dr. Colin Clarke as a witness to assist the Court in understanding the origins, structure, ideology, and mission of ISIS.  Dr. Clarke will also provide context for references in the defendant's own

writings and speech to ISIS geopolitical objectives, battles, conflicts, grievances, prejudice, repression of certain religious minorities, and modus operandi, among other topics.

The record before the Court overwhelmingly establishes that over a sustained period of time, which preceded any contact with undercover FBI employees and sources (OCE, UCE and CHS), not impulsively or fleetingly, defendant Alowemer was a devoted adherent of ISIS, fixated upon their campaign to impact geopolitics and nations through violence and intimidation and establish a caliphate transcending national boundaries.  Enthusiastically, with calculation and premeditation, defendant Alowemer committed himself to the service of ISIS, conceiving of a spectacular, explosive, terrorist act that he would stage and claim in the name of ISIS.  Prior to the culmination of his plan to bomb and destroy a Nigerian church, whose Christian worshippers he denigrated as polytheistic, the defendant also volunteered to commit smaller-scale crude and violent acts.  He asked the FBI UCE for a weapon with silencer so that he could "hunt" the "enemy" in the woods; he offered to provide "hit lists" of Yazidi families residing in Pittsburgh as revenge for the Kurdish alliance with the United States and consistent with ISIS repression of Yazidi communities; he articulated a desire to use explosives against students who were outwardly affiliated with the United States military or ROTC.

Defendant Alowemer, inspired by the ISIS ethos and mission, pledged his allegiance to ISIS and to the then-leader of ISIS, Abu Bakr Al-Bagdhadi, in an impassioned video-taped loyalty oath, or bay'aa in April 2019, which was retained by the FBI despite the defendant's exhortations that it be deleted.  See Doc. No. 3-1.  Through his bay'aa, Alowemer swore allegiance to an

organization that is defined by and glorifies violence, and his actions that followed conformed to that ethos.

**B.      Victim Impact**

Victims were impacted by the defendant's crime.  While the defendant's intended violent explosion was not realized, it had profound impacts upon many victims and the region.  His target, the Legacy International Worship Center, (which had housed a Nigerian Christian congregation during prior years, but did not house such a congregation at the time of the defendant's arrest), was profoundly impacted upon learning of the defendant's plot.  The Pastor of the Church, who has the right to present additional impact at the sentencing hearing, was struck by "worry for the community and he homes nearby, and how many lives could have been lost," if the defendant succeeded.  See PSR.  The aftermath of being notified that the Church was the intended target, was "electrifying," and that racial and religious tensions were exacerbated, congregants stopped attending Church services out of fear, donations declined and the Church suffered financially, and significant contingencies had to be employed to address security concerns, including surveillance cameras, at financial cost.  The threat of harm was a "real pain" and "trauma."  Id.  Clearly, the defendant's intention to prevent Christians "from going to their churches" and "instill fear in their hearts," was realized, even though the bomb did not go off.  Doc. No. 3-1 at 19.

**C.      Analysis of the § 3553(a) Factors**

Based upon a review of the applicable statutory sentencing factors codified in 18 U.S.C. § 3553(a), the United States asserts that a lengthy term of imprisonment is necessary given the

dangerous and potentially lethal nature of the offense, to protect the public, reflect the seriousness of the office, provide just punishment, and afford adequate deterrence to criminal conduct.

To the extent that the defendant asserts that any mitigating factors justify a sentence below 20 years (240 months), the Court should carefully consider that the plea agreement incorporates significant concessions by the United States and a dramatically lower guideline range for the defendant, reduced from 360 months to life, to 240 months.

The United States asserts that, given the severity of the offense and the warranted application of the Terrorism Enhancement pursuant to § 3A1.4, any mitigating factors have been appropriately accounted for in through the plea agreement, which has reduced the defendant's exposure from 360 months to life, to 240 months.

1.   Nature and Circumstances of the Offense (§ 3553(a)(1), Danger of Defendant, Protection of the Public

The nature and circumstances of the defendant's crime are aggravated and egregious and he represents a danger to the public.  His criminal intent was sustained over many years and culminated in a detailed, sophisticated plan to detonate a destructive device at a church in Pittsburgh and trigger copy-cat attacked from ISIS sympathists on U.S. soil.  As will be adduced at the sentencing hearing, the defendant also aspired to expand the ISIS cell beyond Pittsburgh and the UCE and CHS.  In his in-person meeting with the UCE on June 19, 2019, and in prior communications, the defendant expressed a desire to engage a pro-ISIS imam in another city and expand the "cell" plotting to bomb the church in Pittsburgh.  The defendant's aspirations translated to concrete action, targeting and planning.  In furtherance of the plot to bomb the Church, the defendant distributed multiple instructional guides related to the construction and use of explosives

and improvised explosive devices ("IEDs") to the UCE, as well a video of a massive VBIED explosion committed in the name of ISIS that flattened an entire city-block.  The defendant distributed these documents with the intent that the information be used in the assembly of a weapon of mass destruction and in furtherance of conducting an attack in support of ISIS.  The defendant purchased several items with the belief that they were necessary to construct explosives that would be detonated in the vicinity of the Church.  Among the items that the defendant purchased were acetone (in the form of nail polish remover), 9-volt batteries, ice packs, and nails.

The fact that the fortuitous introduction of undercover FBI agents prevented execution of defendant's violent plan with actual ISIS members is not mitigation and does make his crime any less serious.  United States v. Mandhai, 375 F.3d 1243, 1248 (11th Cir. 2004) ("Contrary to Mandhai's assertion, the terrorism enhancement does not hinge upon a defendant's ability to carry out specific terrorist crimes or the degree of separation from their actual implementation. Rather, it is the defendant's purpose that is relevant, and if that purpose is to promote a terrorism crime, the enhancement is triggered . . . The enhancement was proper even though the record reflects that Mandhai lacked both the means and the ability to carry out his defined activity without assistance that was not present"); United States v. Elshinawy, 2018 WL 1521876 (D. Md. Mar. 28, 2018) (quoting Mandhai for proposition that Government need not "prove that the defendant had the means or ability to implement his plans" and that the defendant's purpose is the relevant consideration) (4th Cir. 2019).

      2.      History and Characteristics of the Defendant (§ 3553(a)(1))

The United States anticipates that the defendant will attempt to present mitigation predicated upon a variety of factors. The defendant's plea agreement already incorporates significant concessions and accounts for mitigation.

The automatic increase to Criminal History Category VI for terrorism offenses reflects the singular and enduring dangerousness of defendants who commit such offenses. "Terrorists, even those with no prior criminal behavior, are unique among criminals in the likelihood of recidivism, the difficulty of rehabilitation, and the need for incapacitation." United States v. Ressam, 679 F.3d 1069, 1091 (9th Cir. 2012) (en banc) (quoting United Sates v. Jayyousi, 657 F.3d 1085, 1117 (11th Cir. 2011). "Considering the serious dangers posed by all forms of terrorism, the Guidelines are in no way irrational in setting the default for criminal history at a very high level, with downward departures permitted in exceptional cases." United States v. Meskini, 319 F.3d 88, 92 (2003). The Terrorism Enhancement in § 3A1.4 increases a defendant's criminal history score without regard for actual prior convicted conduct. Defendant, nonetheless, urges the Court to reduce his sentence on the basis of § 4A1.3, suggesting that his criminal history category is overrepresented. A reduction on this basis would directly conflict with the justification and operation of the terrorism enhancement at § 3A1.4 and would negate its justifiable, intended effect.

By his own admission in communications and his post-arrest interview, the defendant had harbored terrorism desires and aspiration for an extended, sustained period of time, including well before he even arrived in the United States. In his post-arrest interview, the defendant In conversations with the UCE, defendant described an incident in Syria where he threw a grenade at a sniper who was located in a minaret, "destroying it and presumably killing the sniper." Doc. No.

9

62 at 15.  At sentencing, United States intends to direct the Court to examples of defendant's fixation upon and support of ISIS years prior to any contact with FBI undercover agents.

This defendant did not intend a singular act.  The United States will highlight evidence that in written communications and in-person with the UCE, by June of 2019, the defendant was already looking beyond the North Side bomb plot and scheming to connect with and engage other like-minded ISIS adherents in the United States, including an imam he had learned of in another city who preached ISIS ideology, (according to the defendant, "I know 100% that he is with ISIS,") and other ISIS "brothers" from Uzbekistan.

The defendant's crime was also aggravated because it was calculated, premeditated, and the result of substantial planning.  Throughout the investigation, the defendant demonstrated increasing levels of sophisticated "operational security" and strategic planning, deleting old accounts and creating new social media and mobile messaging accounts, using encrypted platforms and coded language, conducting surveillance, scouting security cameras, and making small cash-only purchases of IED components, including acetone, nails, ice packs and batteries.  After the explosion at the church, as detailed in his 10-point plan and further discussed with the UCE, he included instructions that they change their clothes and appearance, cover the license plates to the vehicles, temporarily cease communications, surveil "infidel police," create an 'alibi through delayed detonation, and delete existing social media accounts and create new ones.  See Doc. No. 3-1 at 19-21.

      3.      Need for the Sentence to Reflect the Seriousness of the Offense, Promote
                Respect for the Law and Provide Just Punishment (§ 3663(a)(2)(A))

Prevailing law and policy dictate lengthy terms of incarceration for defendants who commit acts of terrorism.  "Congress and the Sentencing Commission had a rational basis for concluding that an act of terrorism represents a particularly grave threat because of the dangerousness of the crime and the difficulty of deterring and rehabilitating the criminal, and thus that terrorists and their supporters should be incapacitated for a longer period of time.  Thus, the terrorism guideline legitimately considers a single act of terrorism for both the offense level and the criminal history category."  United States v. Meskini, 319 F.3d 88, 92 (2d Cir. 2003).

While it has not been applied or sought, the defendant's offense clearly triggers the guidelines hate crimes enhancement pursuant to U.S.S.G. § 3A1.1.  Defendant Alowemer indisputably targeted the Church "because of the actual or perceived race, color, religion, national origin, ethnicity, gender, gender identity, disability, or sexual orientation of any person," which could have increased his guideline range even further.

4.    Specific and General Deterrence (§ 3553(a)(2)(B))

Pursuant to Section 3553(a)(2)(B) of the Guidelines, sentences must provide adequate deterrence to others.  The defendant's sentence in this case has significant potential to effectuate general deterrence if it is appropriately significant and commensurate with the range determined through application of the Terrorism enhancement, § 3A1.4, to his crime.  The sentence imposed in this case also must be severe enough to deter this defendant from engaging in future violent plots and acts, notwithstanding his deep-seated and longstanding fixation with ISIS and terrorist acts.  This defendant, despite his young age, has harbored terrorist aspirations since before he

arrived in the United States.  Notwithstanding his acceptance of responsibility in this crime, given his sustained adherence to ISIS violent ideals, a significant term of incarceration is necessary.

     5.    <u>Avoiding Unwarranted Disparity</u>

This Court must consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).  This defendant committed a crime of terrorism, pledging his allegiance to a most ruthless and violent Foreign Terrorist Organization.  The only way for this Court to avoid sentencing disparity is to sentence this consistently with the guideline range for others who have committed similar crimes and have been sentenced pursuant to the § 3A1.4 Terrorism Enhancement.  The defendant's guideline range, at 240 months, is high because of fact-driven enhancements related to the aggravated threat presented by his intent and conduct.

Few crimes of federal conviction drive sentences higher than terrorism crimes.  In <u>United States v. Ceasar</u>, 10 F.4th 66 (2d Cir. 2021), the Second Circuit reversed a significant downward variance, based in large part on the defendant's prior trauma and need for rehabilitation, for a defendant sentenced for providing material support to ISIS.  The district court applied the terrorism enhancement and determined that the Guideline range was 360 to 600 months.  <u>Id</u>. at 76-77.  After consideration of the sentencing factors and relying heavily on the defendant's prior trauma and need for rehabilitation, the district court sentenced the defendant to 48 months. The Court of Appeals determined that the trial court abused its discretion because, "[w]hen weighing Ceasar's personal history, the district court appears to have considered her background and ensuing needs for mental healthcare and rehabilitation nearly to the exclusion of countervailing sentencing

factors." Id. at 80.  The Second Circuit analyzed similar sentences for others convicted of material support and found a significant disparity, ultimately determining that the 48 month sentence "shocks the conscience." Id. at 86.

Courts of Appeal have also reversed as substantively unreasonable sentences of 22 years for individuals, like this defendant, who plotted to detonate explosives in pursuit of terroristic goals. See United States v. Ressam, 679 F.3d 1069, 1091 (9th Cir. 2012) (Ressam was ultimately resentenced to 37 years); see also United States v. Abu Ali, 528 F.3d 210, 261-69 (4th Cir. 2008) (reversing 30-year sentence for terrorist conspiracy as substantively unreasonable despite defendant joining at age 22 with no criminal history).

## V.    CONCLUSION

Together with evidence that the United States intends to introduce at the sentencing hearing, the United States respectfully submits that the aggravated, premeditated, violent nature of the defendant's crime, committed in allegiance to a most brutal terrorist organization, requires a substantial term of imprisonment, at or near the reduced Sentencing Guideline range.

Respectfully submitted,

CINDY K. CHUNG
United States Attorney

/s/ Soo C. Song
SOO C. SONG
Assistant U. S. Attorney
Pittsburgh, PA
DC ID No. 457268

13